IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JOHN S.[1], | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:20-cv-514 |
| | ) | |
| KILOLO KIJAKAZI[2], Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff John S. ("John") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. John alleges that the Administrative Law Judge ("ALJ") erred by failing to properly evaluate his subjective allegations. I find that the ALJ's decision sufficiently explains her analysis of John's subjective allegations. Accordingly, I **RECOMMEND DENYING** John's Motion for Summary Judgment (Dkt. No. 13), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 15).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

1

the Commissioner's conclusion that John was no longer disabled under the Act. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

This case was previously before this court on appeal, and the court remanded this matter to the Commissioner for additional consideration of John's subjective allegations. R. 689. John filed for DIB on June 18, 2012 and claims that his disability began on December 1, 2011,[3] due to neuralgia and arthritis in hands, vision issues, diverticulitis, sciatica, lower back problems, colostomy, and rectal prolapse.[4] R. 46, 155. John's date last insured was December 31, 2011.[5] R. 11, 168. Thus, he must show that his disability began on or before December 31, 2011 and

---

[3] In his Title II application, John alleged disability beginning October 15, 2006; however, at the hearing, John amended his alleged onset date to December 1, 2011 and offered to accept a closed period of disability ending December 1, 2012. R. 11, 27, 47.

[4] John filed a previous application for disability on October 16, 2007 that was denied at the reconsideration level of administrative review on May 8, 2008. R. 47.

[5] John was 52 years old on his date last insured, making him an individual closely approaching advanced age. R. 18.

2

existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied John's applications at the initial and reconsideration levels of administrative review. R. 46–56, 58–67. ALJ Geraldine H. Page held a hearing to consider John's claims for DIB and entered a decision denying John's claims for benefits on June 12, 2014. R. 11–20.  This court reviewed the Commissioner's denial of John's claim and found that the ALJ did not sufficiently explain why she discredited John's testimony regarding his symptoms.  R. 678–86.  The Social Security Administration remanded the matter to the Commissioner on August 30, 2018. R. 687.

On May 30, 2019, ALJ Page held a second administrative hearing to consider John's claim. R. 614–53. Counsel represented John at the hearing, which included testimony from vocational expert Barry Hensley.  On June 26, 2019, the ALJ entered a new decision analyzing John's claims under the familiar five-step process[6] and denying his claim for benefits. R. 595–607.

The ALJ determined that John was insured at the time of the alleged disability onset and that he suffered from the severe impairments of degenerative joint disease of the feet and possibly fingers; diverticulitis with complications bowel perforation, and status-post surgeries resulting in partial intestine removal; lumbar spine strain and mild degenerative disc disease of the lumbar spine; and mild chronic obstructive pulmonary disease. R. 597. The ALJ determined

---

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 598–99. The ALJ concluded that John retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 599. Specifically, the ALJ found that John could occasionally climb ramps and stairs, kneel, and crawl; could frequently handle, finger, feel, grip, and grasp; and must avoid concentrated exposure to extreme temperatures, excess humidity, pulmonary irritants, hazardous machinery, unprotected heights, vibrating surfaces, and climbing ladders, ropes, and scaffolds. Id. The ALJ also found that John would be absent one day per month on average.

The ALJ determined that John was unable to return to any of his past relevant work, but that he could perform jobs that exist in significant numbers in the national economy, such as mail clerk, hand packer, and office helper. R. 605–06. Thus, the ALJ concluded that John was not disabled. John appealed the ALJ's decision, and the Appeals Council denied his request for review on July 27, 2020. R. 585. This appeal followed.

## ANALYSIS

John's second appeal to this court involves a narrow issue and limited time frame. Specifically, at issue is the ALJ's determination that John could perform a range of light work between December 1, 2011 and December 1, 2012. John argues that the ALJ's decision fails to properly explain why she discredits his testimony regarding his symptoms. This court previously reviewed the ALJ's 2014 decision denying benefits and agreed with John that the ALJ did not sufficiently explain why she discredited his subjective testimony. R. 678. The case was remanded to the Commissioner with specific instructions to provide a clearer explanation of her reasons to discredit John's testimony. The ALJ entered a second decision in 2019, again discrediting John's subjective testimony and denying his request for benefits. On appeal, John

4

argues that the ALJ's second opinion relies upon the same grounds as her first decision, and insufficiently explains why she discredited his subjective allegations. Pl. Br. Summ. J. pp. 6–12. The Commissioner asserts that the ALJ's explanation regarding John's subjective allegations is sufficient and supported by substantial evidence. I agree with the Commissioner that the ALJ's 2019 decision contains a sufficient explanation to support her decision regarding John's subjective allegations, and her decision is supported by substantial evidence.

### A. Medical History

The alleged disability period is from John's alleged onset date of disability, December 1, 2011, through his date last insured, December 1, 2012. However, the period under consideration is actually limited to six months—from June 2012 through December 1, 2012. The ALJ notes in her opinion that John "would have missed many days of work during the period from December 2011 to June 2012 such that it is unlikely he would have been able to maintain employment. However, this period is only seven months. Even assuming the complaints made to his doctors were accurate, they did not last the requisite 12 months under the Act." R. 603.

John has a history of diverticulitis, and has been hospitalized several times due to complications from the disease. He was hospitalized with abscessed diverticulitis for nine days beginning on December 7, 2011, underwent a percutaneous drainage of the abscess and was placed on intravenous antibiotics.[7] R. 356, 488. John returned to the hospital on March 15, 2012, and was diagnosed with a significant large rectal prolapse. R. 487. John underwent a surgical resection of his rectum and was discharged on March 20, 2012. R. 487. However, he returned to

---

[7] Diverticulitis is the inflammation of one or more pouches that bulge from the wall of a hollow organ, such as the colon. Symptoms include muscle spasms and cramps in the abdomen. Diverticulitis in the colon can cause complications, such as an abscess or a perforation. See https://www.mayoclinic.org/diseases-conditions/diverticulitis/symptoms-causes/syc-20371758

5

the hospital on March 24, 2012, with an anastomotic leak, and underwent a temporary colostomy, remaining in the hospital until April 9, 2012. R. 525–26. John returned to the hospital on May 31, 2012 for reversal of his colostomy, and remained hospitalized until June 6, 2012. R. 476–79.

On June 13, 2012, John followed up with his surgeon, who noted that John was 2 weeks post-reversal of colostomy, was "doing great and has no complaints." R. 465. John was having "almost regular bowel movements, there is no diarrhea or constipation…his energy is returning." John was directed to return in four weeks. Id.

On July 11, 2012, John's surgery center noted that he was six weeks post reversal of colostomy, was doing well, his energy was returning daily, he denied any diarrhea, constipation or abdominal pain, and he was back to his usual diet. R. 506.

On August 17, 2012, William Humphries, M.D., performed a consultative examination.[8] John reported frequent abdominal pain and "stools averaging about ten times per day." R. 552. Dr. Humphries diagnosed John with mild COPD, mild carpal tunnel syndrome, postsurgical abdominal pain, mild degenerative joint disease in both feet and possibly fingers, and chronic lumbar strain with sciatica. R. 554. Dr. Humphries limited John to sitting, standing, and walking six hours in and eight-hour day, lifting 20 pounds occasionally and 10 pounds frequently, occasional climbing, kneeling, and crawling, and no continuous gripping or grasping. R. 554.

No treating physician provided an opinion of John's functional limitations during the relevant period. On August 22, 2012, state agency physician Joseph Duckwall, M.D., reviewed John's medical records and determined that he could perform light work. R. 53–54. On May 6,

---

[8] Dr. Humphries performed a previous consultative examination in 2008, pursuant to John's prior disability claim. R. 15, 269.

2013, state agency physician Paula Nuckols, M.D. concluded that there was "insufficient evidence to fully determine how severely limited [John] was before [his date last insured on December 31, 2011]" and denied John's claim for "insufficient evidence." R. 64–65.

### B. Subjective Allegations

John contends that the ALJ did not satisfactorily explain her decision to partly discredit his testimony regarding the symptoms resulting from his impairments, specifically his abdominal pain and frequent bowel movements. I find that the ALJ's opinion contains the specific analysis lacking in the previous decision, and allows for meaningful review.

The ALJ recognized that John was unable to maintain employment for seven months of the period at issue- from December 2011 through June 2012. R. 603. Thus, the issue before the court is whether John could perform light work from June 2012 through December 2012. John testified at the administrative hearing that he needed to go to the bathroom anywhere from 10 to 20 times a day for about a year and a half post-surgery. R. 640. John testified that each bathroom trip lasted approximately 10 minutes to a half hour. Id. The vocational expert testified that all competitive work would be eliminated for someone who needs to go to the bathroom four to five times a day for around 15 minutes a time. R. 650.

When reviewing the evidence, the ALJ determined that John's report to Dr. Humphries that he suffered from diarrhea and abdominal pain was inconsistent with his medical records. The ALJ stated, "[t]he evidence from June and July 2012 shows the claimant denied diarrhea and other gastrointestinal symptoms to his treating practitioner. The claimant did report diarrhea to Dr. Humphries at an evaluation in August 2012, but the undersigned finds this inconsistent with his lack of complaints to treating practitioners. Nevertheless, the undersigned has added the limitation that [John] would be absent up to one day per month on average to accommodate the

7

times when he might have increased abdominal symptoms." R. 603.  The ALJ also stated that "the medical evidence of record does not support the severity of his allegations after the period ending in June 2012….Even assuming the complaints made to his doctors were accurate, they did not last the requisite 12 months under the Act." R. 603.

The ALJ relied on the fact that John "reported almost complete resolution of gastrointestinal symptoms at his follow-ups in June and July 2012. He did not seek any additional treatment for gastrointestinal symptoms until June and December 2013."  The ALJ noted that John reported in December 2013 that he had diarrhea the past two years and he was unable to eat when he left the house. However, the ALJ found that statement inconsistent "with the fact that he went for nearly a year without any treatment after July 2012.  If he were having such severe diarrhea and gastrointestinal symptoms with any consistency, he likely would have sought some type of treatment, rather than waiting a year." R. 604.  The ALJ recognized that John did not want to take medication because he had a bad experience with one medication in the past; however, the ALJ found John's "unwillingness to try new treatments" as "inconsistent with the severe symptoms he was alleging." R. 604.  The ALJ further found John's relatively stable weight inconsistent with severe, frequent diarrhea and limited ability to eat. Id.  Thus, the ALJ determined that John's lack of treatment from June 2012 through 2013 established that his symptoms reemerged in 2013, rather than continuing consistently throughout 2012. Id.

The ALJ also determined that John's treatment was routine and conservative.  She noted that he had limited treatment options due to lack of health insurance but that he was "free to seek treatment at New Horizons and he was able to get some treatment from specialists that [sic] Carilion as evidenced by his bowel surgeries and outpatient follow-ups in 2012." R. 604.  The

8

ALJ found it significant that none of John's treating practitioners placed limitations on him or stated that he was unable to work. R. 605.

Thus, the ALJ provided explanation for her conclusion that John did not suffer from diarrhea or other gastrointestinal symptoms that would impact his ability to work more than missing one day a month between June 2012 and December 2012.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms.[9] SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects

---

[9] In March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3P was issued after ALJ's first decision, and the ALJ's first opinion and the parties' prior briefs referenced a "credibility" evaluation. However, the ALJ's 2019 decision evaluates John's subjective allegations under SSR 16-3P, noting that the same result would be reached even under the old regulation. R. 595. The methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider John's report of his own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

In Arakas v. Commissioner, 983 F.3d 83 (4th Cir. 2020), the Court emphasized that a claimant is entitled to rely exclusively on subjective evidence to prove that his symptoms are so continuous and/or so severe that they prevented him from working a full eight-hour day. Id. at 96. Thus, it is improper for an ALJ to require that a claimant's subjective descriptions of his symptoms to be supported by objective medical evidence. Id. However, "while an ALJ may not discredit Plaintiff's subjective complaints of 'intensity, persistence, and limiting effects of symptoms *solely* because objective evidence does not substantiate,' she is not required to defer to those subjective complaints 'to the extent they are inconsistent with the available evidence.'" Willa F. v. Kijakazi, No. ADC-20-2659, 2021 WL 5167018, at *7 (D. Md. Nov. 5, 2021) (quoting Arakas, 983 F.3d at 95 (emphasis added); Lavinia R., No. CV SAG-20-1083, 2021 WL 2661509, at *4 (D. Md. June 29, 2021)).

Here, unlike in Arakas, the ALJ did not rely upon a lack of objective evidence to discount John's subjective complaints. Rather, the ALJ explained that John's complaints of severe diarrhea and gastrointestinal symptoms were inconsistent with his denial of such symptoms to

10

his treating physicians in June and July 2012; with his failure to seek additional treatment during the period at issue; with his unwillingness to try additional treatment measures; and with his ability to maintain a stable weight. The ALJ accommodated John's complaints of gastrointestinal symptoms between June and December 2012 by providing that he would be absent from work one day per month.

The ALJ's decision specifically addresses the issues raised as concerns in this court's prior opinion; namely, John's report in December 2013 that he had been suffering from severe diarrhea for the past two years. R. 568, 604. The ALJ found this statement inconsistent "with the fact that [John] went for nearly a year without any treatment after July 2012. If he were having such severe diarrhea and gastrointestinal symptoms with any consistency, he likely would have sought some type of treatment, rather than waiting a year." R. 604. The ALJ also recognized that John had a bad experience with medication in the past, but noted that John did not express willingness to try any additional medications or conservative treatments, which seems inconsistent with allegations of severe symptoms. Id.

Thus, the ALJ provided an explanation of her decision to discredit John's subjective allegations, and her explanation is supported by evidence in the record. See Ladda v. Berryhill, 749 Fed. Appx. 166 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility determination because the ALJ explained his reasoning and weighed the claimant's subjective statements against other evidence.)

## CONCLUSION

For the foregoing reasons, I **RECOMMEND AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** John's motion for summary judgment and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to James P. Jones, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: January 10, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge